IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBIE BELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. _____ |
| | § | |
| | § | **JURY TRIAL REQUESTED** |
| DALLAS HOUSING AUTHORITY, | § | |
| | § | |
| Defendant. | § | |

# COMPLAINT

Plaintiff Bobbie Bell ("Ms. Bell") brings this Complaint against the Dallas Housing Authority ("the DHA"), and respectfully shows the following:

## I. SUMMARY OF THE CASE

1. The DHA wrongfully terminated Ms. Bell from its Housing Choice Voucher Program. As a result, Ms. Bell lost her housing voucher subsidy, which she had been receiving for over 25 years.

2. The DHA failed to provide Ms. Bell adequate notice in accordance with the federal regulations and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

3. Moreover, the reasons the DHA gave for Ms. Bell's termination were insufficient, were not a legitimate basis for termination, and indeed, went against the DHA's own policies and practices at the time of Ms. Bell's termination.

**COMPLAINT**
WEST\251533392.2

4. Additionally, the DHA refused to allow Ms. Bell to examine the documents and evidence the DHA relied on at its termination hearing.

5. The DHA arbitrarily denied Ms. Bell's request for reasonable accommodation for her disabilities, which were known to the DHA, and for which Ms. Bell provided documentation to the DHA.

6. The DHA's termination of Ms. Bell's housing voucher subsidy violated the federal statute and regulations governing the Housing Choice Voucher Program and constituted an arbitrary and capricious denial of Ms. Bell's constitutional rights, for which Ms. Bell seeks relief pursuant to 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

7. Because Plaintiff asserts violations of her rights secured by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1437d and its implementing regulations, and 42 U.S.C. § 3613 through 42 U.S.C. § 1983, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

8. Venue is proper in Dallas County as it is the county where the events and omissions took place and where Defendant DHA's principal office in the state is located.

## III. PARTIES

9. Plaintiff Bobbie Bell is an individual resident of Dallas County, Texas, and a citizen of the United States. Ms. Bell resided in Dallas County at all times relevant to this lawsuit.

10. Defendant, the DHA, is a locally established and administered public body in Dallas, Texas. It administers the Housing Choice Voucher Program in Dallas, Texas. Its wrongful actions against Ms. Bell were done under color of law. As a public housing authority,

the DHA is a "unit of government" and its functions are "essential government functions and not proprietary functions." Tex. Local Gov't Code § 392.006.

## IV. STATUTORY BACKGROUND

11. Congress enacted the Section 8 Existing Housing Program in 1974 and the Section 8 Rental Voucher Program in 1987, both of which allowed low-income families a wider choice of housing and dispersed these families throughout communities. In 1998, Congress merged these two programs to create the Housing Choice Voucher Program (the "Voucher Program"). Under the Voucher Program, the DHA signs an annual contributions contract with the United States Department of Housing and Urban Development ("HUD"), which provides funds to the DHA for administration of the Voucher Program and authorizes it to pay housing subsidies directly to participating landlords in the private market on behalf of qualified low-income persons like Ms. Bell. The qualified low-income person then pays the difference between the actual market rent charged by the landlord and the amount subsidized by the DHA.

12. Persons seeking to obtain a housing voucher must submit an application to the DHA and then eligible applicants are placed on a waiting list. When an applicant's name is reached on the waiting list, the applicant is issued a housing voucher and is then responsible for locating a landlord willing to lease under the Voucher Program. The dwelling must meet certain housing quality standards set by HUD.

13. Once a voucher holder locates a dwelling and a willing landlord, the voucher holder submits a request to the DHA for approval of the lease. The DHA then inspects the dwelling to ensure it meets HUD's housing quality standards. If the dwelling passes the inspection, the voucher holder signs a lease with the landlord and the DHA signs a housing assistance payments contract, which sets out the monthly contract rent and the amount of the

monthly subsidy the DHA will pay to the landlord on behalf of the voucher holder. The amount of the monthly subsidy depends upon the family's income, the amount of the contract rent, the amount of utilities the family must pay, and a payment standard based upon fair market rent established by HUD.

14. At the end of the lease term under the Voucher Program, which is typically for one year, the family may choose to move and lease from another landlord, or sign another lease with the same landlord. A voucher holder must attend an annual recertification meeting and submit a recertification application to prove she is still eligible to participate in the Voucher Program. A voucher holder has a continued right to participation in the Voucher Program so long as she continues to meet the eligibility requirements and complies with her legal obligations set forth in the federal regulations promulgated by HUD. A family may be terminated from the Voucher Program for only those grounds set forth in the federal regulations. If the DHA makes the decision to terminate a family, it must comply with specific notice requirements set out in the federal regulations.

## V.  FACTUAL BACKGROUND

15. In 1989, the DHA admitted Ms. Bell and her husband to its Section 8 Voucher Program and issued the couple a housing voucher.

16. Ms. Bell is an low-income, disabled individual who suffers from reflex sympathetic dystrophy syndrome that has damaged her left shoulder and left her unable to work. She has also suffered two brain aneurysms, for which she underwent surgery in 2007, and two strokes. She currently suffers from seizures.

17. At the time of her termination, Ms. Bell's sole source of income was social security disability payments in the amount of $710 per month.

18. The Dallas Housing Authority's stated reason for terminating Ms. Bell's housing assistance is based on the purported criminal activity of her grandson.

19. On or about June 27, 2011, Ms. Bell's minor grandson, who was living with Ms. Bell at the time, was charged with possessing marijuana. The grandson received deferred adjudication for the charge, community service, and his charge was dismissed.

20. In July of 2011, Ms. Bell contacted her DHA caseworker, Chiquita Williams, by telephone to notify her of the grandson's criminal charge. At that time, Ms. Williams advised Ms. Bell not to worry about the incident because the grandson was a minor at the time of the charge and served no jail time.

21. At Ms. Bell's annual recertification interview in 2012, Ms. Bell asked Ms. Williams whether she needed to report the grandson's criminal charge on her recertification application, and Ms. Williams advised Ms. Bell that her application would be processed without that criminal history because of the grandson's minor status at the time of the incident and because no jail time was served.

22. Ms. Bell and her grandson reported his criminal history during Ms. Bell's 2012 recertification meeting and application.

23. Ms. Bell continued to receive housing assistance from the DHA despite the DHA's knowledge of Ms. Bell's grandson's criminal charge.

24. In June 2013, Ms. Bell again applied for recertification of her housing assistance, listing her grandson and granddaughter as household members.

25. At the 2013 recertification interview, Ms. Bell again asked Ms. Williams whether she needed to report her grandson's 2011 criminal charge. Ms. Williams advised the grandson and Ms. Bell that they did not need to note the grandson's criminal history on the recertification

application because of the grandson's minor status at the time of his criminal charge.

26. In July 2012, the DHA had amended the housing assistance payments contract with Ms. Bell's landlord to increase Ms. Bell's monthly payment of rent from $110 to $316. Following Ms. Bell's 2013 voucher recertification, however, just weeks before the DHA sent Ms. Bell notice of her voucher termination, the DHA raised the level of its monthly assistance to Ms. Bell from $806 to $1,125 to cover the full cost of her rent, thereby making Ms. Bell's monthly rent payment $0.

27. At the beginning of August 2013, Ms. Bell's grandson moved out of her rental home at Ms. Bell's request and began living with his mother in Plano, Texas.

28. Ms. Bell called Ms. Williams between August 2 and August 5, 2013, and left voicemail messages with Ms. Williams notifying her that the grandson was no longer living in Ms. Bell's household, and that she was removing the grandson from her lease.

29. Later in August 2013, Ms. Bell called Ms. Williams to inquire about the status of her change in income and again left voicemail messages with Ms. Williams. Ms. Bell never heard back from Ms. Williams.

30. Ms. Bell then received written notice from the DHA dated September 12, 2013, informing her that her housing assistance was being terminated.

31. The termination notice, which was signed by Ms. Williams, stated only that the grandson had failed a criminal background check, but left the designated space for a specific reason blank.

32. Rather than including a copy of the subject criminal background check, the termination notice merely advised that "a copy of the criminal background check will be made available for pick-up from the legal department between 10:00 AM – 3:00 PM, Monday-

Thursday."

33. After receiving the termination notice, Ms. Bell timely requested an informal hearing, which was conducted by Sheila Reynolds on October 1, 2013. Her caseworker, Ms. Williams, was not present at the hearing on October 1, 2013.

34. At the October 1 2013 hearing, Ms. Bell presented evidence that her grandson was a minor at the time of the offense and testified that Ms. Williams had instructed her that she did not need to report the offense because her grandson was a minor when he was charged. Ms. Bell also presented notarized letters from her landlord and her grandson's mother showing that the grandson was no longer a member of her household. She presented testimony about her disabilities at the hearing.

35. During the October 1 hearing, Ms. Bell asked to review the results of her grandson's criminal background check. Ms. Reynolds denied Ms. Bell's requests, in violation of the DHA's written policy.

36. On October 2, 2013, Ms. Reynolds mailed Ms. Bell a written decision upholding her termination from the HCVP notifying her that the housing voucher termination was being upheld.

37. In the decision letter, Ms. Reynolds states that the DHA presented evidence that included, *but was not limited to*, Ms. Bell's voucher program file and the results of her grandson's criminal background check, which included a <u>June 27, 2013</u> possession of marijuana charge. However, no such charge exists and Ms. Reynolds did not specify any other grounds for the termination.

38. On October 28, 2013, Ms. Bell requested that the hearing officer's decision be reconsidered. In her request for reconsideration, Ms. Bell described her disabilities and her

reliance on her grandson for care and medications and submitted a note from her doctor as evidence of her disabilities.

39.     Ms. Bell later asked to review the results of the criminal background check, and was again denied access to that information.

40.     In early November 2013, only after Ms. Bell's request for reconsideration was rejected by DHA's general counsel, was Ms. Bell finally able to obtain from DHA's legal department the results of the criminal background public records search DHA relied upon for the its termination of her housing assistance.

41.     The DHA did not follow its own stated policies in terminating Ms. Bell's assistance for an offense committed by a minor.

42.     When describing DHA protocol for disqualifying participants from its housing programs for criminal activity, MaryAnn Russ, Executive Director of the DHA, told the Dallas Morning News that "[i]f the crime was violent or drug-related *and the perpetrator was an adult when it took place*, we must follow up."

43.     However, the DHA terminated Ms. Bell's assistance even though Ms. Bell's grandson was a minor at the time he was arrested for criminal activity, contrary to the DHA's stated policy and practice at the time of Ms. Bell's termination, and the repeated advice given to Ms. Bell by her DHA caseworker, Ms. Williams.

44.     Ms. Bell made a written request to the Board of Commissioners of the DHA and the Executive Director of the DHA requesting reinstatement of her voucher and a final decision on her termination.

45.     Ms. Bell based her reinstatement request on the following: (1) By not specifying the reason for the proposed termination in the notice of termination, the DHA failed to provide

Ms. Bell adequate notice before the appeals hearing; (2) the grounds stated in the hearing officer's decision letter were not only erroneous, but were insufficient to constitute an adequate written decision specifying the reasons for the termination; (3) Ms. Bell was not provided her grandson's criminal record upon which the proposed termination was based *before* the DHA's decision to terminate decision and as a result, Ms. Bell was denied the opportunity to dispute the accuracy and relevance of the record; (4) Ms. Bell's repeated requests to review the evidence upon which her termination was based, including the criminal record of her grandson, were denied before, during, and after the hearing; (5) Ms. Reynolds, and the DHA, failed to accommodate her disability, of which the DHA was aware at the time of the termination; and (6) the DHA terminated her housing assistance in an arbitrary and capricious manner by (a) failing to consider all the relevant circumstances of her case and by (b) failing to follow the DHA's own stated policy and practice of terminating a family member from the housing voucher program for criminal activity committed by a family member only if that family member was an adult when the alleged activity took place.

46. In her reinstatement request, Ms. Bell again asked the DHA for a reasonable accommodation of its rules, practices, and procedures in light of the fact that Ms. Bell's disability and reliance on her grandson for care prevented her from monitoring his activities as a minor.

47. The DHA's Executive Director, MaryAnn Russ, and the DHA's Board of Commissioners failed to respond to Ms. Bell's written request for reinstatement and a final decision, and thereby made the decision to uphold her termination from the Voucher Program.

48. Because of the actions of the DHA and its agents, Ms. Bell has suffered, and will continue to suffer, great and irreparable losses, including, but not limited to, loss of her Section 8

housing voucher, deprivation of her civil rights and rights to housing on an equal basis with other persons with regard to her disability, and extreme emotional distress.

49. The deprivation of Ms. Bell's constitutional right to due process prior to her termination from the voucher program occurred pursuant to an official policy, practice, or custom, issued by a policymaker, which was the moving force behind the violation. The DHA's official policies, practices, or customs that violate Ms. Bell's constitutional rights include, but are not limited to, issuance of inadequate notice of termination, which failed to provide sufficient information regarding the alleged grounds for termination; refusal by the DHA and its agents to allow Ms. Bell to examine the evidence upon which her termination was based; issuance of inadequate written decision upholding Ms. Bell's termination; implementation of an inadequate informal hearing process; and disregard for the relevant regulations and the DHA's written and stated policies, the program participant's disabilities, and other mitigating factors in determining whether to terminate a participant from the program on the basis of another family member's purported criminal activity.

## VI.  CAUSES OF ACTION

### COUNT ONE
**(Fourteenth Amendment Due Process Clause and Fair Housing Act, 42 U.S.C. § 1437d(k)(1), 24 C.F.R. § 982.555(c)(2)—Failure to Provide Adequate Written Notice)**

50. Paragraphs 1 through 49 above are incorporated herein by reference for all purposes.

51. As set forth above, the DHA failed to provide adequate notice to Ms. Bell prior to her termination.

52. By serving insufficient notice of her termination from the Voucher Program on Ms. Bell, the DHA violated Ms. Bell's rights under 42 U.S.C. § 1437d(k)(1), 24 C.F.R. § 982.555(c)(2), and Ms. Bell's federally protected rights under the Fourteenth Amendment to the United States Constitution, as secured by 42 U.S.C. § 1983.

### COUNT TWO
### (Fourteenth Amendment Due Process Clause and Fair Housing Act, 42 U.S.C. § 1437d(k)(3), 24 C.F.R. § 982.555(e)(2)(i)— Refusal to Allow Plaintiff to Examine Documents or Records Related to the Termination)

53. Paragraphs 1 through 49 above are incorporated herein by reference for all purposes.

54. The DHA's failure to allow Ms. Bell to examine the documents and records upon which the DHA's termination decision was based before, during, and after the hearing violated Ms. Bell's rights under 42 U.S.C. § 1437d(k)(1), 24 C.F.R. § 982.555(e)(2)(i), and Ms. Bell's federally protected rights under the Fourteenth Amendment to the United States Constitution, as secured by 42 U.S.C. § 1983.

### COUNT THREE
### (Fourteenth Amendment Due Process Clause and Fair Housing Act, 42 U.S.C. § 1437d(k)(6), 24 C.F.R. § 982.555(e)(6)--Failure to Provide Adequate Written Decision Supporting the Termination)

55. Paragraphs 1 through 49 above are incorporated herein by reference for all purposes.

56. The DHA's written decision upholding the termination of Ms. Bell's Section 8 housing voucher was not adequate to support the termination and thus violates Ms. Bell's rights under 42 U.S.C. § 1437d(k)(6), 24 C.F.R. § 982.555(e)(6), and Ms. Bell's federally protected rights under the Fourteenth Amendment to the United States Constitution, as secured by 42 U.S.C. § 1983.

## COUNT FOUR
**(Fourteenth Amendment Due Process Clause, 42 U.S.C. § 1437d(q)(2), and 24 C.F.R. § 982.553(d)(2) —Failure to Timely Provide Plaintiff a Copy of Criminal Record Upon Which Termination Was Based or an Opportunity to Dispute the Accuracy and Relevance of Record)**

57. Paragraphs 1 through 49 above are incorporated herein by reference for all purposes.

58. The DHA's failure to provide Ms. Bell a copy of her grandson's criminal background check upon which the DHA based her termination from the Section 8 voucher program before the termination deprived her of her right to dispute the accuracy and relevance of the record pursuant to 42 U.S.C. § 1437d(q)(2), 24 C.F.R. § 982.553(d)(2), and Ms. Bell's federally protected rights under the Fourteenth Amendment to the United States Constitution, as secured by 42 U.S.C. § 1983.

## COUNT FIVE
**(Failure to Accommodate Plaintiff's Disability)**

59. Paragraphs 1 through 49 above are incorporated herein by reference for all purposes.

60. By refusing Ms. Bell's request for a reasonable accommodation of its rules, practices, and procedures, the DHA, individually and through its agents, violated 42 U.S.C. § 3604(f)(3)(B).

## COUNT SIX
**(Fourteenth Amendment Due Process Clause, 24 C.F.R. § 982.552(c)(2)(i) —Arbitrary and Capricious Termination)**

61. Paragraphs 1 through 49 above are incorporated herein by reference for all purposes.

62. The DHA terminated Ms. Bell's Section 8 housing voucher in an arbitrary and capricious manner, in contravention of its own policies and practices at the time of the termination, and without considering all the relevant circumstances pursuant to 24 C.F.R. § 982.552(c)(2)(i), such as Ms. Bell's disabled status and the effects of denial or termination of assistance on other family members who were not involved in the action or failure to act.

## VII.  DAMAGES

63. Paragraphs 1 through 62 above are incorporated herein by reference for all purposes.

64. The DHA's deprivation of Ms. Bell's housing voucher and the violation of her constitutional and statutory rights caused Ms. Bell harm, in that it led to improper termination of her housing voucher, which placed Ms. Bell in a very dangerous position of homelessness and constituted a serious threat to her health, safety, and well-being.  Ms. Bell has suffered severe adverse impacts to her physical and emotional health and well-being as direct result of the DHA's wrongful actions.

## VIII.  JURY DEMAND

65. Plaintiff demands a trial by jury of all claims in this Complaint on which a jury trial is available.

## IX.  CONDITIONS PRECEDENT

66. All conditions precedent have occurred or have been performed.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1)  Order the Defendant, the DHA, to immediately reinstate Plaintiff into the Section 8 Voucher Program and issue her a new voucher that covers the full cost of her current rent, or in the alternative, order Defendant to provide Plaintiff with new notice and opportunity to present her case at a termination hearing;

(2)  Award Plaintiff compensatory damages for the actual damages and emotional distress she has suffered by Defendant's actions or failures to act;

(3)  Award Plaintiff exemplary damages;

(4)  Award Plaintiff all lawful pre-judgment and post-judgment interest;

(5)  Award Plaintiff her cost of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(6)  Award Plaintiff cost of suit and reasonable attorneys' fees as to all of her claims against Defendant;

(7)  Grant Plaintiff a trial by jury on all claims;

(8)  Order such other and further relief, both legal and equitable, to which Plaintiff may be justly entitled.

| | |
|---|---|
| Dated: May 13, 2015 | Respectfully submitted,<br><br>By: */s/ Eliot T. Burriss*<br>Eliot T. Burriss<br>State Bar No. 24040611<br>DLA Piper LLP (US)<br>1717 Main Street, Suite 4600<br>Dallas, Texas 75201-4629<br>(214) 743-4500 Telephone<br>(214) 743-4545 Fax<br>eli.burriss@dlapiper.com<br><br>Katherine E. Chambers<br>State Bar No. 24083709<br>DLA Piper LLP (US)<br>1000 Louisiana Street, Suite 2800<br>Houston, Texas 77002<br>(713) 425-8439 Telephone<br>(713) 300-6042 Fax<br>katherine.chambers@dlapiper.com<br><br>**ATTORNEYS FOR PLAINTIFF** |